Thank you, Your Honors. May it please the Court, Jeffrey McCoy for Plaintiff Appellant Tin Cup, LLC. I will strive to reserve five minutes of my time for rebuttal. Your Honors, if the Corps wishes to change its standards for delineating wetlands, it must follow the procedures prescribed by Congress. In the 1993 Appropriations Act, Congress directed the Corps to use the 1987 manual until a final wetlands delineation manual is adopted. Directed that it continue to use the 1987 guidelines as it has since 1991. Correct, Your Honor, until a final wetlands manual. Between 1991 and 1993 Budget Act, the Corps had used something, maybe the 1987 guidelines, to issue a couple of clarifications or guidance letters indicating that there was a different way to estimate whether growing seasons occurred in land that for one reason or the other remained frozen. No, since 1992, Your Honor, the Corps had used the 1987 manual because in the 1992 Appropriations Act, Congress stated that no funds that were appropriated in the 1992 Act could be used to delineate wetlands under the 1989 manual or any manual that has not followed the notice and comment procedures of the APA, which left one manual, the 1987 manual. Right. So in 1993, Congress directed the Corps to continue using the 1987 manual as it had. It's not specific about the time, but presumably since at least 1992. So it continued to use the 1987 manual until a final wetlands manual is adopted. Right. And so, Your Honor, those both will and until are clear words of futurity. Can you point to any authority for the proposition that the word will is a word of futurity that overcomes the presumption against future application of appropriation laws? Your Honor, the plain definition of... I asked for authority that will overcomes the presumption against future application of appropriations laws. Do you have any authority for that? No, Your Honor. But in terms of the plain definition of will, the plain definition of will is an auxiliary verb indicating simple futurity. And Your Honor, for authority, you also take into account until, which there is authority for, that that binds beyond the fiscal year. And that comes from the GAO's Red Book, which quotes from the House Appropriations Committee and has said that Congress often uses until to indicate that the provision is binding or lasts beyond the fiscal year. And in fact, in the 1993 Act, the Congress used until, even in just two paragraphs earlier in the same section, it says that Congress appropriated a certain amount of funds to be used until expended. And that means that is available until expended, even if it's not used within the fiscal year. If I'm understanding your argument correctly, you argue that the Corps' interpretation of the 1993 Budget Act arose in the course of this litigation and that it previously used the 1987 manual. What are we to make of the fact that the Corps has been issuing regional supplements for years? In fact, the Alaska supplement was issued more than a decade ago in 2007. Well, Your Honor, the fact that, I think that this goes to the second question, not whether or not the 1990, the first question is whether the 1993 Act binds the Corps beyond the fiscal year. And the Corps, in U.S. v. Bailey, recognized that that was the case, that it binds. Now, to the question of these regional supplements, that goes to whether or not the requirements of the 1993 Act have been satisfied. So these regional supplements, so long as they are actual supplements to the 1987 manual, the Corps can use them. It's when there's a situation here when there is a specific use that is contradictory to the 1987 manual where a problem arises. And even, Your Honor, even to the extent that the Alaska manual is a true supplement to the 1987 manual, sorry, the Alaska supplement is a true supplement, it can be used to delineate whether. Well, do we owe the Corps any deference for its interpretation that the 2007 supplement expands upon rather than conflicts with the 1987 manual? Your Honor, I, no, Your Honor, because under our deference, an agency is accorded no deference when it's plainly erroneous or inconsistent with the, with the regulation. They say it expands rather than conflicts. Well, Your Honor, so the 1987 manual, and also, this is kind of an hour upon hour, because first, what every, what all this is interpreting is the regulatory definition of wetlands that the Corps has adopted and adopted since the late 1970s, which has not changed since then. Then they adopted the 1987 manual to expand on that, and now we are talking about the Because in the 1987 manual, the Corps has specifically described or defined wetlands hydrology in terms of a growing season, and it does not vaguely describe growing season. It specifically describes growing season as those portions of the year in which the soil temperature 19.7 inches below the surface is above biological zero. And that definition is on 130 of the excerpts of record, and it's in the definition section. So that is the definition. Now the Corps can change that definition by adopting a new final wetlands delineation manual, but it has not. But instead, it's adopted the Alaska Supplement, which completely abandons soil temperature as a standard for determining wetlands hydrology. And that is conflicted because growing season is so specifically defined, it does not leave a lot of room for expansion. And so it has abandoned that specific definition, and it has not done so in the procedures prescribed by Congress. As a result, the Supplement is not an expansion of the 1987 manual. It's a completely new document. Why does the 2000 Supplement, why must the 2007 Supplement comply with the Congressional Review Act, as you're arguing in your briefing? So that question actually goes to, because the Corps makes two arguments. One is that the Alaska Supplement is merely just a use of the 1987 manual. In the alternative, it argues that the Supplement is a new final manual within the meaning of the 1993 Act. And so in that question, if this Court views the Alaska Supplement as a new manual, then it has to be a final manual. And final, the plain language of final is following the procedures. Why isn't it a final manual per the requirements of the 1993 Budget Act? Your Honor, the definition of final is to follow the procedures for adopting this type of document. The Corps has indicated that this is a guidance manual. That seems an appropriate definition. And the standards for adopting guidance manuals are to follow the Congressional Review Act. Mr. McCord, can I take you back for a second to a question I tried to phrase, and perhaps not too precisely. But the 1987 guidance, we've got that, right? Correct. All right. Then we have the 1993 Budget Act that says the guidance should be used as it has been since 1991, right? Right. That was 1993. But in 1991 and 1992, the Corps issued two relevant guidance documents that provide alternative means for establishing a growing season and hydrology beyond the strict ground temperature requirements of the 1987 manual. They're at SER 182 and 186. Specifically, an October 1991 guidance document provides that, quote, in certain parts of the country where plant communities in general have become more adopted to regional conditions, local means of determining growing season may be more appropriate and can be used. Keep that in mind, that's 1991. That action by the Corps is presumably known to Congress in 1993 when they adopt the Budget Act with futurity language, saying you have to use the 1987 guidance as it has been used since 1991. So, why don't we find that the Corps changed the rigid 19.75 degree centigrade standard for growing season by its 1991 guidance, which was approved by Congress' Budget Act of 1993? Well, Your Honor, so this was passed in 1991. At the time of 1991, the Corps was using the 1989 manual, not the 1987 manual. And so, the... Oh, I see. So your position is that the guidance which I've just cited relied on the 1989 guidance, and since the 1989 guidance was rejected by Congress, so were the guidance letters issued there under. Correct. And then Congress said, go back to 1987. And they were aware of these changes, and that's why they asked for recommendations. And so, that is why that is not applicable, and I apologize for not clarifying what your question was. Clear that up. So Your Honor, as a result, because the Alaska Supplement does not comply with the standards of the 1987 manual, this Court must reverse the judgment of the District Court and vacate. I'd now like to discuss one point that the Corps brought up in its opposition brief about harmless air. Reverse and vacate, or reverse and remand? Well, reverse and vacate the permitting decision and remand it to the Corps. I guess you are correct that you would remand it to the District Court. We would ask the District Court to vacate and remand it to the agency to comply with the proper procedures in issuing the permit decision. As to harmless air, Your Honor, the use of the Alaska Supplement drastically increased the amount of jurisdictional wetlands on Tin Cup's property. So, Tin Cup's consultants submitted evidence to the Corps of permafrost on the wetlands. They were, and those are the supplemental excerpts of records 16-20-24, 12 to 18 inches below the surface, and it was submitted on July, around July 11th. Your position is that in areas where there is permafrost, and there's never 5 degrees centigrade under 19.7, there can't be a growing season, and therefore there can't be any wetlands. That's correct. A growing season under the definition that is currently, that is in the 1987 manual. We, the Corps can change the definition of growing season. By notice and public hearing and other procedures under the APA. Yes. And it hasn't done that? No, and they've not adopted a new, and it also needs to be a new final... I said no, you meant yes. Yes, and it needs to be a, I meant no, that's not the only requirements. That's necessary, but not sufficient. The other requirement is it needs to be a national manual, because if you look at the Senate report for the 1993 Act, one of the positive aspects that it discussed, of the 1987 manual, was that it took 10 years, and that the Corps did, spent $5 million doing field testing. In the EA for the Alaska supplement, the Corps admitted that this type of manual would be feasible. It said it would take 5 to 6 years to adopt a new national manual. The reason why it would take 5 to 6 years is that they would need to take a systematic approach to resolving all the technical problems. That's exactly what Congress indicated in the legislative history of the 1993 Act, they wanted the Corps to do. So yes, notice and comment, your honor, is important, but it also needs to be a national manual. Your position is that even though in the permafrost areas, there is actual growth at times of the year, that is not a growing season under the 1987 guidance. Correct, and the Corps can, if it adopts a new manual, change that definition of growing season, but it has not, and it has not, there are still, soil temperature is still a factor in many of the other regional manuals. So yes, your honor. But the permafrost really doesn't, I mean in the real world it doesn't make much sense to use temperature, because you have, things grow in the permafrost. If you're talking about the desert or something else, that might be a different situation, but here, things grow. And that's, when you get back to a classic definition of wetlands, that's what it governs. Well, and your honor, wetlands is both, and this has been, wetlands is both a scientific and a policy definition, and so Congress has made a determination, and the determination is that the Corps needs to adopt a national manual. And so long as it does that, and so the regulatory definition, and the Clean Water Act, it can adopt a new manual, but it has not, and so that is why the Corps' decision in this case must be vacated. I'd like to reserve. Like to reserve, okay. Thank you. Good morning, your honors. I'm David Gunter from the Department of Justice, here on behalf of the Army Corps of Engineers. Good morning. The underlying case here is simply, are there wetlands on Tin Cup's property? Tin Cup is saying yes, sorry, the Corps is saying yes, based on substantial evidence in the record, but that evidence is Tin Cup's. Their own consultant issued to us a delineation as part of their permit application, and according to the record, we simply have adopted it in full. The Corps confirmed that information with site visits, and now Tin Cup is arguing that we have to ignore all of that because of a one-year appropriation statute passed 25 years ago that they claim locked in a definition of growing season that the Corps itself says has since been disproved by strong evidence. Well, even if will is not by itself a word of futurity, what he's arguing, isn't it significant that it is paired with the word until in the 1993 Budget Act? I think it's not significant, and he referred to the Red Book. The Red Book's discussion of until, and specifically funds available until expended, uses that phrase as a term of art that applies to appropriations and identifies a particular kind of appropriation, a no-year appropriation. If you look at the section of the Red Book that discusses the words of futurity, it does not mention the word until as one of the possible words of futurity, although it mentions several others. Some of the ones it mentions are hereafter, the 1993 Act uses the word hereafter 26 times, and yet it does not appear in the provision that we're trying to interpret now. The Red Book also mentions- I don't see how you can get around the idea of futurity. Furthermore, the Corps of Engineers will continue to use the Corps of Engineers 1987 manual as it has since August 17, 1991 until a final wetlands delineation manual is adopted. Your position is that only has to do with expenditure of funds under the 1993 Act. I think it's possible to read until, which doesn't specify that it will extend beyond 1993, to identify the Corps' obligations during 1993 up until the point that it adopts something new. And the Court's case law construes words of futurity very narrowly. Unless it is obvious that they extend in the future, then they do not convey futurity. What is your reading of this as far as the temporal extension of this language? In our view, it does not identify obligations to the Corps, which I'll get to in a minute, but if it identifies obligations for the Corps, those obligations extend until the end of fiscal year 1993, unless the Corps sooner than that adopts a new final wetlands delineation manual. But I think that even if you consider the word will to be a word of futurity, there's another problem. It is not a mandatory word, and here we're relying on the distinction between the words will and shall. They're used in consecutive provisions of the Act, and the word shall clearly imposes a mandatory duty on the Corps not to use the 1989 manual during the 1993 fiscal year. And then in the next provision, Congress uses the word will, which has to be interpreted differently if these provisions are to be given different meanings. In our view, the way to interpret the word will is simply a description of what the Corps is going to do, and that description is supported by the legislative history, in which members of Congress asked the Corps witnesses, what will the Corps do if we tell it that it can't use the 1989 manual? And the Corps responded, we will use the 1987 manual. And then Congress wrote that into the Act. At this point, I want to mention... But you argue that you're entitled to skid more deference in your interpretation of the 1993 Budget Act, but the Budget Act is an appropriations bill that determines how funds are allocated. How is it a statute, as you argue, that the Corps administers, thereby entitling the Corps to an interpretation of deference? Well, this provision is not necessarily an appropriations provision. The first paragraph is, but the second paragraph is not. The second paragraph is specifically about what the Corps has to do in its expert administration of the Clean Water Act, and that's something that the Corps has done for years, does thousands of times a year. And so our position is that it makes sense to give the Corps some deference in how to interpret and apply whatever obligation Congress has put on it in the 1993 Act. And this Court in Newton Nations v. Bettelock said that HHS can interpret provisions that were... Just to you, that is not necessarily it being ambiguous under Chevron. I don't see anything ambiguous in this under Chevron. Do you? There's certainly ambiguity in the phrase, for example, 1987 Manual. As you pointed out yourself, the Corps changed what the 1987 Manual means between 1987 when it was adopted and 1992 when Congress first addressed it. No, it adopted another manual, the 1989 Manual, but it didn't change the 1987 Manual. Respectfully, I disagree. You yourself mentioned the questions and answers on the 1987 Corps of Engineers Manual. This is Supplemental Excerpts of Record 186. And I'm afraid Mr. McCoy made an error when he said that this was questions and answers about the 1989 Manual. In fact, Congress, this document is from October 1991. That's after the 1992 Appropriations Act, which seems strange, but the 1992 fiscal year began on October 1st, 1991. And so this document which you read from, in which the Corps said, our field officers are not going to be bound by the specific definition of growing season in the 1987 Manual if it doesn't make sense under local conditions, this was an interpretation of the 1987 Manual prior to Congress's approval of the 1987 Manual in the 1993 Act. But Mr. McCoy was wrong when he was an error in pointing me to the 1989 Manual as a source of this. Yes. I believe that was a simple factual error, which the Court can see questions and answers on the 1987 Manual right here. How can we determine if they were referring to a 1989 Manual rather than a 1987 Manual? How can you determine whether the Corps was referring to that in this document? At the top of Supplemental Excerpts of Record 186, this is a memo titled, Questions and Answers on 1987 Corps of Engineers Manual. So our view is that what Congress meant exactly in the 1993 Act by the 1987 Manual is a question that it was relying on the Corps to interpret and implement as the Corps did wetlands delineations under that Manual. And in our view, if I can move on to the other issues, I'm, of course, happy to answer questions about futurity if the Court still has them. But in our view, the Corps has done exactly what Congress required it to do if there is any continuing requirement in the 1993 Act. So if the 1987 Manual defines the growing season as the portion of the year when the are higher than biologic zero, 5 degrees Celsius, why doesn't the 2000 Supplement, which provides an alternate method in determining the growing season, conflict with the definition provided in the 1987 Manual? You mean the 2007 Supplement, I think? Yes, Supplement, yes, 2007. And the Corps did say in 2007 that that definition will supersede what it had said in the 1987 Manual. But the Corps had already varied what it was saying in the 1987 Manual, allowing for use of local conditions in determining what the growing season is. And here, the Corps went to the area, saw deciduous vegetation, saw it growing. The Corps' own consultant, this is at Supplemental Excerpts 12, told the Corps in Tin Cup's permit application wetland hydrology within the growing season was present. And so the Corps was using these other observations and information in the record to identify when the growing season was without any evidence of soil temperature. And one of the problems with the record here, at least for Tin Cup, is that there is no evidence in the record of soil temperature at 19.7 inches below the surface. All the parties understood at the time of the permit application that we were using proxies to understand whether the growing season existed and how long it might be. So it's true that the Alaska Supplement has replaced that definition, but it's not necessarily true that that definition had previously been the only thing that the Corps was allowed to look at when it was examining where the growing season might be. So if, let's say, if we were to decide, and this is hypothetically, that the 1993 Budget Act applies, and if we were also to find that the Act does not allow for supplements to the 1987 manual, then for you to prevail, must we find that the 2007 Supplement is a final wetlands delineation manual? That's one of the two arguments on which we could prevail. But yes, let me address that one first. But until this litigation, I think the Corps has never interpreted the manual to be a final rationalization. Well, actually, I strongly disagree that the Corps has never interpreted the 1987 Manual as supplemented to be a final manual. The 1987 Manual was final agency action. It was adopted with notice and comment based on the most recent science at that time. The 2007 Alaska Supplement is also an agency guidance manual with exactly the same status that the 1987 Manual had. It was adopted with notice and comment. The Corps responded to those comments in the record. Tin Cup's consultants were among the commenters. The Corps used up-to-date science, and now the Corps, that is the consummation of the agency's decision-making process and is certainly final in that sense. I think that Mr. McCoy referred to our position in Bailey where we suggested that the Alaska Supplement could not be used, and I don't think that we suggested that. If you go back and reread the brief that we filed in that case, we were asking the Court of Appeals for our deference to our interpretation of our own manuals, and that's exactly what we're asking the Court for here. We're asking the Court to understand that in our application of the 1987 Manual, we allow for field officers to make judgments based on local conditions. That's exactly what the legislative history says that Congress wanted. Congress thought that the 1989 Manual had taken too much discretion away from local officials, and so the 1987 Manual gives local officials that discretion. We interpret the manual to allow that, and so in Bailey, we were asking for our deference to that interpretation, and we're doing the same thing here. Does our deference require a preliminary finding of ambiguity the way that Chevron does in Step 1? Yes. I think that our deference requires What is the ambiguity? Well, the ambiguity is in what circumstances, if you will, can the 1987 Manual definition of growing season be varied? They say whatever the circumstances, there may be some circumstances, but they certainly aren't variable here. The 1987 definition of growing season, I think the position of the appellant is, can be varied by a final wetlands delineation manual when it's adopted. I think their position is the 2007 Alaska Supplement is not a final wetlands delineation manual. Your position is contrary to that. Yes. Again, this is an alternative argument. We think we could win on other grounds before this, but our view is that the 2007 Supplement certainly is a final wetlands delineation manual, and let me explain to the Court a couple of the key reasons why. First, the 1993 Act didn't require a formal regulation. The 1992 Act had said if the Court wants to adopt something other than the 1987 Manual, it must use the formal notice and comment. The 1993 Appropriations Act omitted that language, giving the Court more flexibility to adopt a final document. What is a final wetlands delineation other than by notice and comment? Well, I don't know whether something could be final if it did not have notice and comment, but here the Alaska Supplement did have notice and comment, and so in our view, it's final in that sense. I think it's also final in that it is the consummation of the Court's process of examining up-to-date scientific information. The 1987 Manual was outdated in several respects. The USDA definition of growing season was based on crops. It didn't work well across the country, as this October 1991 memo identified, and so the 2007 Alaska Supplement was the consummation of the agency's reconsideration of how to use the most up-to-date available science. I think I will address at the moment counsel's argument that that means that it is not a nationwide standard. First of all, I don't think that the 1993 Act requires a nationwide standard. It certainly doesn't say so in the text, and it also doesn't indicate in the legislative history, but in our view, the 1987 Manual, as supplemented, is still a single nationwide standard. The Court is required to find three things in all wetlands delineations – hydrophytic vegetation, hydric soils, and wetland hydrology – and the argument here is just about one of the technical criteria that the Court uses to find one of those three things. The only way that the regional supplements vary how the Court applies those three factors is in respect to regional variations that already exist. It is only different to the extent that areas themselves are different, and given those differences, it tells Court field officials how to apply the same standard nationwide, given those variations. But the difference is that the Alaska supplement doesn't have the precise temperature and depth that the 1987 guidance has. They say you can determine on local conditions without telling us what those local conditions are. It's giving broadest discretion to the Corps of Engineers to call anything a wetlands. Well, I disagree, because the 1987 Manual itself, in a section called Flexibility, which is at SER 88, says that Corps officials can vary the criteria stated in the Manual as long as they explain it in the record. And here there's ample explanation in the record of why the Corps believed that wetlands are present on Tin Cup's property. And I would say the number one element of that is Tin Cup's own submission to the Corps as part of its permit application, in which its consultants submitted exactly the wetlands delineation that the Corps used here. A second element of what in the record demonstrates why the Corps could depart from its temperature-based growing season here is its actual observations of vegetation on the site, which, as Chief Judge Thomas pointed out, is really what's at stake in the CFR definition of wetlands. It's about the inundation of soil sufficient to support vegetation of a type that's ordinarily found in wetlands. And so there's plenty of evidence here on which the Corps was able to find wetlands to be present, even under the 1987 Manual. Now, a key problem for Tin Cup is that there is no evidence of soil temperature 19.7 inches below the surface. There's lots of evidence that there may be permafrost in 33 inches below the surface, 37 inches below the surface. One of the Corps' scientists said that you might drill down 50 feet to find whether there is permafrost there. And the growing season definition in the 1987 Manual only cares about 50 centimeters below the surface. It's 19.7 inches. And there's simply no evidence of that. That's because when the parties were trying to figure out whether there was permafrost and what it might mean, they weren't focused on this specific growing season definition. They were trying to answer a different question, which is not presented in this case. So when Tin Cup says over and over again, this is an area of discontinuous permafrost, there are measurements of permafrost, all of that's true, but none of it establishes that biological zero exists year-round at 19.7 inches below the surface on any part of Tin Cup's property. Everybody was using proxies here, including the Corps, and that's why it's reasonable for the Corps to issue a permit based on those proxies. Unless the Court has other questions, I'll simply close with the thought that the Supreme Court has said, Congress does not hide elephants in mouse holes. And that's related to the idea that words of futurity have to exist in an appropriation statute. There's no reason to read the 1993 Act as making a permanent change to the Clean Water Act, which gives the Corps authority to identify where wetlands exist and where they don't. Instead, in the 1993 Act, Congress said what it expected the Corps to do, based on the Corps' own testimony to Congress. And in return, the Corps has respected the concerns that Congress expressed, concerns about notice and comment proceedings and scientific validity. All of that is consistent with the 1993 Act, and the Court should uphold the Corps' permit here. Thank you, Counsel. Rebuttal? Yes. Thank you. First, to address that Tin Cup's consultants submitted the delineation. As consultants, it is their job to try and determine what the Corps is doing. And basically, what they submitted was, if the Alaska Supplement applies, then these are delineated wetlands. And we don't disagree. If the Alaska Supplement applies, then that is the proper determination. The question, the consultants later objected on whether or not the Alaska Supplement was the proper. So that, I think, is an irrelevant fact. They were merely stating what they thought the Corps was applying at that time. Now to I think it's important that Congress use August 17, 1991. That was the date that the 1992 Act was, that the 1992 Act was adopted. The interpretive memo that was adopted came later than that. But also, Your Honor, I think, like I said, in interpreting this, to look at the legislative history of the 1993 Act, it indicates what Congress wanted the Corps to do. It said, one of the things that we really liked about the 1987 manual was that it was an extensive process, an extensive analysis. And then it used final wetlands, it will use the 1987 manual until it adopts a final wetlands delineation manual. And presumably, it meant the same type of thing. Now, it's curious to me that the Corps said that this provision is not specifically an appropriations provision, but then still wants to apply the standard that applies to appropriations provisions. It's true that appropriations provisions do have a presumption against futurity. Now I would say that even if that presumption applies, will and until are those clear words of futurity. And to address the difference between will and shall, well, shall is also a term of art in the Appropriations Act, and it is always used in reference to an appropriations of funds, says, these funds shall be appropriated or shall not be used. Well, if they use the two words in this, and will and shall, isn't there a presumption that you know the difference? I mean, I don't know if anyone really, you know, we get all, it's, I don't know if that's really true, but isn't there, that you say what, you know, if you use both words, that you don't mean to use them interchangeably. That may be true, Your Honor, but I think that Congress did use will. Will is, I mean, by definition, a word of futurity and also can be, and is often also a requirement. And so I think that there really is no distinction between will and shall in here, and especially when you use it in conjunction with until. Will you please address the point that was made by your learned friend, which is that the portions which I discussed with you earlier, and you said that was part of the 1989, was really a part of 1987. Yeah, as I said at the beginning of my rebuttal, Your Honor, that it's, if you're looking at the dates of the 1993 Act, it says August 17th, 1991. The interpretive memo was adopted later than August 17th. Right, but it says right on the top, questions and answers on the 1987 Corps of Engineers manual. You're right, and Your Honor, in terms of, like I said, one is, is this a final wetlands delineation manual that, I see that I'm out of time, may I? Yeah, one question is whether this counts as a final wetlands delineation manual in terms of what Congress wanted. The other is whether the increased regionalization, I mean it does mention regionalization of hydrophytic vegetation, it's also whether or not it applies to all the factors. And with that, Your Honor, we would ask that the Court reverse. Thank you. Thank you both for your arguments this morning. The case just argued will be submitted for decision, and thanks for your very good presentation. Thank you. We'll be in recess. All rise.
judges: Thomas, Callahan, Bea